UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
FERNANDO ANTONIO VALDEZ,

                    Plaintiff,

            v.

THE MORGAN GROUP, LLC a/k/a MORGAN
GROUP and a/k/a MORGAN GROUP LLC,
190 W 170 REALTY LLC D, 190 W
170 REALTY LLC and SCOTT MORGAN,

                    Defendants.
-----------------------------------------------------------------X

Case No. 21-cv-1393

**COMPLAINT**

Plaintiff FERNANDO ANTONIO VALDEZ ("Valdez" or "Plaintiff"), by his attorneys, RAPAPORT LAW FIRM, PLLC and MILLER LAW, PLLC, as and for his Complaint, alleges as follows:

### PRELIMINARY STATEMENT

1.    Plaintiff brings this action to seek unpaid wages, including unpaid overtime compensation and interest thereon, unpaid minimum wages, reimbursement for unlawful deductions, liquidated damages and other penalties, injunctive and other equitable relief and reasonable attorneys' fees and costs, under, *inter alia*, the Fair Labor Standards Act ("FLSA") §§ 6 and 7, 29 U.S.C. §§ 206 and 207.

2.    This action further invokes the supplemental jurisdiction of this Court to consider claims arising under New York Labor Law ("NYLL") (e.g., New York Wage Payment Act; NY Labor Law §§ 191, 193, 195, and 12 N.Y.C.R.R. Part 141-1.9, 2.10, Part 142), and NY Labor Law § 215).

3.    At all relevant times, Defendants THE MORGAN GROUP, LLC a/k/a MORGAN GROUP and a/k/a MORGAN GROUP LLC ("Morgan Group"), 190 W 170 REALTY LLC D ("190 Realty D"), 190 W 170 REALTY LLC ("190 Realty") and SCOTT

MORGAN (collectively, "Defendants") operated as a unified and centrally-controlled real estate enterprise (the "Morgan Enterprise") that, upon information and belief, owns, controls and operates approximately 41 apartment buildings (the "Morgan Buildings") in New York City, primarily in Bronx County.

4. Upon information and belief, members of the Morgan family (namely, Brooke Morgan, Scott Morgan and Ryan Morgan) own and control the Morgan Buildings through a series of limited liability companies that exist for the purpose of nominally holding title to the Morgan Buildings.

5. Upon information and belief, although Defendants' buildings are titled in the names of various limited liability companies, they are all under the ultimate control of the Morgan Enterprise.

6. At all relevant times, Defendants required Plaintiff to work in excess of forty (40) hours per week without paying him overtime compensation as required by the FLSA and NYLL.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction of this action pursuant to the provisions of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 et seq., including under 29 U.S.C. §§ 207, 216, and 217. This Court also has jurisdiction in light of the existence of a controversy arising under the laws of the United States (28 U.S.C. §1331) and supplemental jurisdiction to consider claims arising under New York state law, pursuant to 28 U.S.C. §1367.

8. Venue as to Defendants is proper in this judicial district, pursuant to 28 U.S.C. §1391. Defendants transact business and have agents in the Southern District and are otherwise within this Court's jurisdiction for purposes of service of process. Defendants operate facilities and employed Plaintiff in this judicial district.

9. This Court has personal jurisdiction over the Defendants, pursuant to New York Civil Practice Law and Rules § 301, in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiff within the State of New York and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the law of the State of New York, and accordingly may be served with process pursuant to Fed. R. Civ. P. 4(h)(1).

10. Defendants' regular and ongoing transaction of business in the State of New York includes, *inter alia*, actively operating, owning and controlling a portfolio of apartment buildings in New York City, and employing individuals, including but not limited to Plaintiff, at these buildings.

11. A declaratory judgment is authorized in this case by 28 U.S.C. § 2201.

## THE PARTIES

**Plaintiff:**

12. Plaintiff is an adult, natural person who resides in Bronx County, New York.

13. Approximately twenty years ago, Plaintiff began working as the superintendent of 190 West 170th Street, Bronx, New York (the "Building"), a multi-family apartment building with approximately 67 apartment units.

14. Plaintiff continued to serve as superintendent of the Building until in or about early July 2020, when Plaintiff retired.

**Defendants:**

15. Upon information and belief, Defendants operate the Morgan Enterprise as a unified enterprise, for a common business purpose, to wit: directly and/or indirectly owning, managing and controlling the Morgan Buildings from the Defendants' main office located at 1 Sound Shore Drive, Suite 203, Greenwich, CT 06830.

16. Members of the Morgan Family, including defendant Scott Morgan, hold senior positions in the limited liability companies through which Defendants control and own the Morgan Buildings.

17. Simply by way of example, loan documents relating to the Building that were filed with the New York City Department of Finance identify defendant Scott Morgan as the Managing Member of 190 Realty, which holds title to the Building, as well as Managing Member of other title-holding entities through which Defendants exercise ownership and control of the Morgan Buildings.

18. In Defendants' filings with the New York City Department of Housing Preservation and Development, Defendants designate: (a) The Morgan Group LLC as the managing agent of the Building; (b) 190 Realty as the title owner of the Building; and (c) Brooke Morgan as the head officer of 190 Realty.

19. In Defendants' loan documents filed with the New York City Department of Finance on Defendants' behalf, Defendants also refer to 190 Realty D as the title owner of the Building.

20. Upon information and belief, THE MORGAN GROUP, LLC is a New York corporation doing business in Bronx County, New York, with a principal place of business at 1 Sound Shore Drive, Suite 203, Greenwich, Connecticut 06830.

21. Upon information and belief, THE MORGAN GROUP, LLC also conducts business and/or refers to itself in its business dealings under other names, including "The Morgan Group," "Morgan Group," and "Morgan Group LLC."'

22. Upon information and belief, although Defendants sometimes use the fictitious name "Morgan Group LLC," there is no such entity authorized to conduct business in New York State.

23. Upon information and belief, Defendants interchangeably refer to "The Morgan Group LLC" and "190 W 170 Realty LLC" as owners of the Building.

24. Upon information and belief, 190 Realty D is a corporation organized under the laws of the State of Delaware, with offices for the conduct of business at 1 Sound Shore Drive, Suite 203, Greenwich, CT 06830 and at 441 West Putnam Avenue, Greenwich, Connecticut 06830.

25. Upon information and belief, 190 Realty D is controlled by members of the Morgan Family, and it has offices located at 441 West Putnam Avenue, Greenwich, Connecticut and/or at 1 Sound Shore Drive, Suite 203, Greenwich, Connecticut 06830.

26. Upon information and belief, Scott Morgan is a natural person, who is Managing Member of 190 Realty D and 190 Realty, and he transacts business in New York State through his ownership, management and control of the Morgan Buildings and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the law of the State of New York, and accordingly may be served with process pursuant to Fed. R. Civ. P. 4(h)(1).

27. Defendants are an integrated enterprise, with common management, control, personnel policies, ownership, and inextricably intertwined operations and functioning.

## FACTUAL ALLEGATIONS

28. As described herein, Defendants have, for years, knowingly engaged in unlawful business practices by requiring Plaintiff to work numerous hours of overtime on a daily and/or weekly basis without overtime compensation that Defendants were obligated to pay under the FLSA and NYLL; paying flat weekly sums that resulted in effective hourly rates that fell below New York minimum wage; illegally deducting sums from paychecks; and failing to provide wage notices and wage statements required by NYLL.

29. Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

30. At all relevant times, Defendants employed, and/or continue to employ, Plaintiff within the meaning of the FLSA and all other statutes referred to in this Complaint.

31. At all relevant times, Defendants employed, and/or continue to employ, Plaintiff within the meaning of the NYLL, §§ 2 and 651.

32. Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.00.

33. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay building maintenance employees by the same method, and share control over employees.

34. Each Defendant possessed substantial control over the policies and practices over Plaintiff's working conditions.

35. Defendants jointly employed Plaintiff and are Plaintiff's employer within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

36. In the alternative, Defendants constitute a single employer of Plaintiff.

37. Upon information and belief, Scott Morgan, together with other members of the Morgan family, operates the corporate defendants as either alter egos of himself and/or fails to operate the corporate defendants as legally separate entities apart from himself.  Upon information and belief, among other things, the assets and revenues of the corporate defendants are intermingled, including, inter alia, using assets and revenues from their various title-holding entities as collateral for loans that benefit the entire Morgan Enterprise.

**Factual Allegations Relating to Plaintiff's Wage Claims:**

38. Defendants became Plaintiff's employer on or about February 6, 2014, when Defendants purchased the Building from the Building's prior owners.

39. Upon becoming Plaintiff's employer, Defendants failed to provide Plaintiff with a time-of-hire wage notice, in violation of NYLL § 195(1), a violation for which Plaintiff has a private cause of action against Defendants and is entitled to recover liquidated damages.

40. Plaintiff continued to be Defendants' employee until Plaintiff's retirement in or about early July 2020.

41. Defendants issued weekly checks to Plaintiff in the gross amount of $538.20, which covered only the first 40 hours of work per week, and did not compensate Plaintiff for the substantial number of overtime hours (i.e., hours worked above the first 40 hours of work per work week) that Plaintiff worked.

42. Except for occasional additional payments, that were modest, Defendants paid Plaintiff the same meager wages each week, regardless of the amount of overtime hours he worked.

43. During extended periods of his employment, Plaintiff's rate of pay per week was below the minimum wage rate applicable to large employers in New York City.

44. For example, during the calendar year 2019, the minimum wage rate applicable to large employers in New York City was $15.00. However, during this period, Plaintiff's effective, regular hourly rate of pay was $13.45.

45. Plaintiff's duties involved virtually all aspects of maintenance, including removal of trash and recyclables, painting, light electrical work, light plumbing, attending to tenants' after-hour complaints (such as relating to leaks), interacting with contractors and

tenants, accepting deliveries of materials, addressing leaks, shoveling snow, cleaning surface areas, and being on-call at all hours.

46. Tenants communicated with Plaintiff at all hours of the day and night.

47. Plaintiff regularly worked 62 or more hours per week, as follows: <u>Monday through Friday (weekdays)</u>: from approximately 7:00 a.m. to 5:00 p.m., with no regularly scheduled, uninterrupted lunch breaks; and <u>Saturdays and Sundays</u> (weekends): typically a minimum of six hours per day. Based on the foregoing, Plaintiff's regular work schedule entailed approximately 62 hours of work per week, and oftentimes far more than that.

48. But in actuality, Plaintiff was required to be on-call and handle tenant requests at all hours, including in late evenings, which entailed work hours that were far in excess of his foregoing regular schedule and wage underpayments, particularly because Plaintiff was on-call, and he was regularly called upon to perform work after hours.

49. Simply by way of example, in or about the summer of 2019, there was a leak issue involving the bathtub of Apartment 4D of the Building, which required emergent work to the bathtub's drain, which Plaintiff attended to through the evening.

50. Plaintiff provided his own tools of the trade, without reimbursement from Defendants, including, among other tools, an electric drill, battery-powered drill and snow blower.

**AS AND FOR A FIRST CAUSE OF ACTION**
**FLSA Overtime Wage Violations, 29 U.S.C. §§ 201 *et seq.*"**

51. Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

52. At all relevant times hereto, the Defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d). Defendants employed Plaintiff as a maintenance worker, employment positions which engaged Plaintiff in commerce, as defined under 29 U.S.C. §§ 203(b), (e), (g) and 29 U.S.C. § 207(a)(1). At all times relevant hereto,

Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

53. In the performance of his duties for Defendants, Plaintiff worked substantially more than forty (40) hours per week, yet did not receive overtime compensation for the work, labor and services he provided to Defendants, as required by the FLSA, 29 U.S.C. §§ 206 and 207. The precise number of unpaid overtime hours will be proven at trial.

54. Defendants' violations of the FLSA were willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

55. As a result of the foregoing, Plaintiff seeks judgment against Defendants for all unpaid wages, including overtime wages owed by Defendants to Plaintiff for the three-year period preceding the filing of this case, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

## AS AND FOR A SECOND CAUSE OF ACTION
### Violation of the New York Minimum Wage Act

56. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

57. The minimum wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and Plaintiff.

58. Defendants, in violation of the NYLL, willfully paid Plaintiff less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

59. Plaintiff was damaged in amounts to be determined at trial.

60. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## AS AND FOR A THIRD CAUSE OF ACTION
### New York Labor Law – Overtime Wages

61. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

62. The overtime wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and Plaintiff.

63. Defendants willfully failed to pay Plaintiff for all of the hours that he worked in excess of 40 hours in a workweek.

64. Defendants willfully failed to pay Plaintiff overtime at a rate of time and one-half his effective, regular hourly rate for hours worked in excess of 40 hours per workweek.

65. Defendants willfully failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff.

66. As a result of Defendants' knowing or intentional failure to pay Plaintiff overtime wages for hours worked in excess of 40 hours per workweek, Plaintiff is entitled to compensation for unpaid overtime, liquidated damages, attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## AS AND FOR A FOURTH CAUSE OF ACTION
### NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements

67. Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

68. The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid.

69. Defendants willfully failed to provide Plaintiff with wage statements at the end of every pay period that correctly identified the regular hourly rate; whether paid by the hour, shift, day, week, salary, piece, commission, or other; number of overtime hours

worked; gross wages; allowances, if any, claimed as part of the minimum wage; and such other information as required by NYLL § 195(3).

70. Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

## AS AND FOR A FIFTH CAUSE OF ACTION
### NYLL Wage Theft Prevention Act (WTPA) – Failure to Provide Wage Notices

71. Plaintiff incorporates by reference in this cause of action the prior allegations of this Complaint as if fully alleged herein.

72. The NYLL and WTPA, as well as the NYLL's interpretative wage orders, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

73. From its enactment on April 9, 2011 through January 5, 2016, the WTPA also required employers to provide an annual written notice of wages to be distributed on or before February 1 of each year of employment (amended in January 2015 to be distributed "upon hiring" and not annually) and to provide to employees, a written notice setting forth the employee's rates of pay and basis thereof; the name of the employer; physical address of the employer's business; names used by the employer; and other mandated disclosure.

74. In violation of NYLL § 191, Defendants willfully failed to furnish Plaintiff, at the time of hiring (and annually for those years prior to the January 2015 amendment) or whenever there was a change to their rate of pay, with wage notices required by NYLL § 191.

75. Due to Defendants' violation of NYLL § 195(1), Plaintiff is entitled to recover from Defendants liquidated damages, including: $50.00 per work day, up to

$5,000.00, together with reasonable attorneys' fees, and costs of this action, pursuant to the NYLL § 198(1-b).

## RELIEF SOUGHT

**WHEREFORE,** Plaintiff, Fernando Antonio Valdez, respectfully requests that the Court grant the following relief:

1. Declaring, adjudging and decreeing that Defendants violated the minimum wage and overtime provisions of the FLSA and NYLL as to Plaintiff;

2. Awarding Plaintiff damages and restitution for unpaid compensation, unpaid minimum wages, unpaid overtime compensation, including interest thereon, and statutory penalties in an amount to be proven at trial, as well as liquidated damages;

3. Awarding statutory damages for Defendants' failure to provide Plaintiff with statements and information required by NYLL § 198(1-b) and (1-d) and NYLL § 195(3);

4. Awarding statutory damages for Defendants' violation of NYLL § 191 by failing to furnish Plaintiff, at the time of hiring (and annually for those years prior to the January 2015 amendment) or whenever there was a change to his rate of pay, with wage notices required by NYLL § 191;

5. Declaring that Defendants' violations of the NYLL were willful;

6. For all other Orders, findings and determinations identified and sought in this Complaint;

7. For prejudgment and post judgment interest on the amount of any and all economic losses, at the prevailing legal rate;

8. For reasonable attorneys' fees and expenses of this action, pursuant to 29 U.S.C. § 216(b), New York Labor Law and as otherwise provided by law; and

9. Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
February 17, 2021

**RAPAPORT LAW FIRM, PLLC**

By: /s/
_____
Marc A. Rapaport, Esq.
One Penn Plaza, Suite 2430
New York, New York 10119
Ph: (212) 382-1600
mrapaport@rapaportlaw.com

**MILLER LAW, PLLC**

By: /s/
_____
Meredith R. Miller, Esq.
167 Madison Ave, Suite 503
New York, New York 10016
Ph: (347) 878-2587
meredith@millerlaw.nyc

*Attorneys for Plaintiff*
*Fernando Antonio Valdez*